819 P.2d 995

**STATE of Arizona, Petitioner,**

**v.**

**The Honorable Richard D. NICHOLS, a Judge Pro Tempore for the Superior Court of the State of Arizona, County of Pima, Respondent.**

**and**

**Michael LAYNE, Real Party in Interest.**

**No. 2 CA–SA 91–0045.**

Court of Appeals of Arizona,
Division 2, Department B.

May 14, 1991.

Review Denied Dec. 3, 1991.

---

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Arizona Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 25, 1990.

**410**

Frederick S. Dean, City Atty. by R. William Call and William F. Mills, Tucson, for petitioner.

D. Jesse Smith, Tucson, for real party in interest.

## OPINION

JAMES C. CARRUTH, Superior Court Judge.*

The State of Arizona seeks special action relief from the Superior Court's order granting real party in interest Michael Layne special action relief from the Tucson City Court's denial of his motion to dismiss a charge of driving while under the influence of alcohol (DUI). The superior court concluded that the DUI proceeding subjected Layne to double jeopardy in light of the prior suspension of his license under A.R.S. § 28–694. Because this is a matter of statewide importance, relating to legal as opposed to factual issues, *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983), and because we find that the superior court has acted in excess of its legal authority, we accept jurisdiction and grant relief. Ariz.R.P.Spec. A. 3, 17B A.R.S.

---

\* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to

## FACTS AND PROCEDURAL BACKGROUND

Layne was arrested for DUI in August 1990. Two breath tests were administered, the results of which showed that Layne had a blood alcohol content (BAC) of either .123% or .118%. His driver's license was therefore automatically suspended for 90 days pursuant to A.R.S. § 28–694.

Layne requested and received an administrative hearing, after which the suspension of his license was sustained. He then moved to dismiss the DUI charge in Tucson City Court, claiming the proceeding violated his right against double jeopardy as he had already been prosecuted and punished for the same conduct. The motion was denied. Layne then sought and was granted special action relief in superior court. In reversing the city court, the superior court concluded that it was bound by this court's decision in *Taylor v. Sherrill*, 166 Ariz. 359, 802 P.2d 1058 (App.1990). This special action followed.

The issue presented is whether the double jeopardy clause of the Fifth Amendment of the United States Constitution bars a criminal prosecution for DUI against one whose driver's license has been suspended under A.R.S. § 28–694 as a consequence of the same conduct forming the basis for the DUI charge. For the reasons stated below, we conclude that it does not. We therefore reverse.

## LICENSE SUSPENSION PROCEEDINGS UNDER A.R.S. § 28–694 ARE NOT A PROSECUTION FOR PURPOSES OF THE DOUBLE JEOPARDY CLAUSE

In *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969), the Supreme Court held that the double jeopardy clause of the Fifth Amendment to the United States Constitution "protects against a second prosecution for the same offense after acquittal ... a second prosecution for the same offense

---

Arizona Supreme Court Order filed July 25, 1990.

after conviction ... [a]nd ... multiple punishments for the same offense." With regard to successive prosecutions, the Supreme Court held in *Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564 (1990), as follows:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted....

We do not believe that the automatic suspension of the driver's license of a person whose blood or breath alcohol concentration is determined to be .10 percent or greater under A.R.S. § 28–694 or the subsequent administrative hearing on that issue are prosecutions for double jeopardy purposes.

■ Based on *Pearce* and *Grady*, we believe that a prosecution for double jeopardy purposes is a judicial proceeding initiated on behalf of the state by officers charged with the enforcement of the state's penal laws, seeking the conviction and punishment of persons alleged to have committed a criminal offense.[1]

In *Campbell v. Superior Court*, 106 Ariz. 542, 550, 479 P.2d 685, 693 (1971), our supreme court upheld the constitutionality of A.R.S. § 28–691, the implied consent law.[2] The court recognized the difference between the automatic administrative revocation of a license for failure to submit to a breath test under § 28–691 and a criminal prosecution, stating as follows:

> An accused who refuses a blood test is not required to post bond for his appearance, and he does not have to give bail or enter into a recognizance. He is under no legal duty to appear at the hearing if he does not desire to introduce evidence of the basis and reasonableness of his refusal. He cannot be fined or imprisoned either for his refusal to take the test, or for his failure to appear at a hearing. In fact there is nothing about the entire proceeding that parallels the procedure in a criminal prosecution.

106 Ariz. at 550, 479 P.2d at 693, citing *Deaner v. Commonwealth*, 210 Va. 285, 170 S.E.2d 199 (1969).

The reasoning of this court's recent decision in *Mullet v. Miller*, 168 Ariz. 594, 816 P.2d 251 (Ct.App.1991), is applicable here. In *Mullet*, we held that a proceeding before the corporation commission regarding the alleged offer or sale of unregistered securities and violation of various antifraud statutes was not a prosecution for double jeopardy purposes. We found that administrative proceedings generally are not prosecutions, notwithstanding the fact that the administrative proceeding may even result in a loss of liberty. At 597, 816 P.2d at 254, citing *United States v. Rising*, 867 F.2d 1255 (10th Cir.1989); *Alex v. State of Alaska*, 484 P.2d 677 (Alaska 1971); *Larkin v. State of Florida*, 558 So.2d 486 (Fla.App. 1990); *Epps v. Board of Probation and Parole*, 129 Pa.Commw. 240, 565 A.2d 214 (1989). Specifically, we held that we did "not believe that it was the intent of the Supreme Court in *Grady* to extend the protection against double jeopardy to nonjudicial proceedings by an administrative body charged with regulating business." 168 Ariz. at 597, 816 P.2d at 254. Similarly, we do not believe it was the Supreme Court's intention to extend the protection to administrative proceedings before the Department of Transportation.

We note that there are numerous other administrative bodies in this state that are responsible for regulating areas of business, government, and professions. If proceedings before such bodies were to be considered prosecutions for double jeopardy purposes, the consequences would be anomalous. For example, a proceeding be-

---

1. This definition includes proceedings under the state's traffic laws, notwithstanding the fact that such proceedings are characterized as civil. Civil traffic offenses were traditionally criminal and the consequences of violating traffic laws are primarily punitive. *See Taylor v. Sherrill, supra.*

2. A.R.S. § 28–694 became part of Arizona's implied consent law in 1987. Laws 1987, Ch. 262, eff. Jan. 1, 1988.

fore the State Bar resulting in the revocation or suspension of the license to practice law would subsequently bar a criminal prosecution for the conduct that may have been the basis for the administrative proceeding. We do not believe *Grady* was meant to apply under such circumstances.

## AUTOMATIC LICENSE SUSPENSION UNDER § 28–694 IS NOT PUNISHMENT FOR DOUBLE JEOPARDY PURPOSES

As we noted in *Mullet*, finding that a proceeding is not a prosecution "does not end the double jeopardy inquiry." At 597, 816 P.2d at 254. We must also determine whether the 90–day license suspension under A.R.S. § 28–694 is a punishment, thereby barring the state from punishing the accused again in a criminal DUI proceeding under A.R.S. § 28–692. In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court addressed the issue of whether the United States was barred from seeking fines for the submission of false Blue Cross/Blue Shield claims in a civil proceeding against an individual who had already been convicted of criminal charges arising out of that same conduct. The Court held that in determining whether a proceeding is criminal or civil, it is the character of the sanction imposed that is crucial, as opposed to the labels "criminal" and "civil." The Court noted that "civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." 490 U.S. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501. The Court further held as follows:

> The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads.... To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and

the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment [retribution and deterrence].... *[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can be explained only as also serving either retributive or deterrent purposes is punishment, as we have come to understand the term....* We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

490 U.S. at 448–49, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501–02 (citations omitted, emphasis added).

▅ Layne interprets *Halper* to stand for the proposition that if the purpose of a statute is not *solely* remedial but also punitive, that is, serves retributive or deterrent purposes, it results in punishment within the meaning of the double jeopardy clause. We disagree. We believe that in the quoted portion of *Halper*, the Court intended to include those statutes which can only be explained as serving the purposes of punishment as well as remedial purposes. As the state points out, in an important footnote the Court in *Halper* states that "[t]his is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment." 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7, 104 L.Ed.2d at 501 n. 7. Thus, the fact that a statute designed primarily to serve remedial purposes incidentally serves the purposes of punishment as well does not mean that the statute results in punishment for double jeopardy purposes.

In *Heddan v. Dirkswager*, 336 N.W.2d 54, 57 (Minn.1983), the supreme court of

Minnesota characterized its implied consent law, similar in all material respects to Arizona's, as "designed to encourage the taking of tests and to remove suspected and certifiable drunken drivers from the road." *See also People v. Esposito,* 121 Ill.2d 491, 118 Ill.Dec. 396, 400, 521 N.E.2d 873, 877 (1988) (summary suspension of driver's license for refusing to take test for BAC and for BAC of .10 or greater was "intended to protect the public, not to punish the licensee"); *Ruge v. Kovach,* 467 N.E.2d 673, 681 (Ind.1984) (statute providing summary suspension serves the public interest). In upholding the constitutionality of Massachusetts' implied consent statute in *Mackey v. Montrym,* 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321, 334 (1979), the Supreme Court found that the law served the public safety by deterring drunk driving, encouraging drivers to submit to breath tests, and promptly removing such drivers from the road. We believe that these are the goals of A.R.S. §§ 28–691 and 28–694 and that the statutes are primarily remedial. Before the statute was amended, adding § 28–694, except for refusal to take a test to determine BAC, a license could only be suspended after a conviction under § 28–692. There would, therefore, often be significant delay between the time of arrest and suspension. *State ex rel. Ross v. Nance,* 165 Ariz. 286, 798 P.2d 1295 (1990). "[T]he purpose of A.R.S. § 28–694 is to provide a method of administratively suspending licenses based on a BAC test result of .10 or more." 165 Ariz. at 288, 798 P.2d at 1297.

In arguing that § 28–694 is designed to punish, Layne cites to case law and legislative history referring to the goals of the implied consent law as punitive or to suspension as a sanction. Specifically, Layne refers to *Sherrill v. Department of Transportation,* 165 Ariz. 495, 498, 799 P.2d 836, 839 (1990), in which our supreme court, citing portions of the minutes of the Senate Committee on Judiciary, stated that the "sanction" of § 28–691 was to "assure that licenses of dangerous drivers are revoked quickly, and to increase the certainty that a drunk driver receives a penalty even if that driver provided no evidence of intoxi-

cation." The court prefaced this statement, however, by saying that "[t]he purpose of the implied consent law is to remove from Arizona highways those drivers who may be a menace to themselves and others because of intoxication." *Id. See also State v. Superior Court,* 154 Ariz. 574, 744 P.2d 675 (1987); *Traylor v. Thorneycroft,* 134 Ariz. 482, 657 P.2d 895 (App. 1982).

In an analogous case, the supreme court held in *Loughran v. Superior Court,* 145 Ariz. 56, 58, 699 P.2d 1287, 1289 (1985), that the suspension of the license of an individual found guilty of two DUI's within 24 months "is not a criminal penalty to punish the driver but a civil and administrative remedy to protect the public from the impaired driver.... The purpose of the revocation is to protect the public and not to punish the licensee." We acknowledge that A.R.S. §§ 28–691 and 28–694 may serve an additional purpose of punishing the violator and perhaps deterring that individual as well as other drivers from driving while intoxicated. We do not believe, however, that because of this incidental effect, it "may not fairly be characterized as remedial." *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

The result reached here is not inconsistent with this court's decision in *Taylor v. Sherrill, supra.* In *Taylor,* we found that default judgments for civil traffic violations for unsafe turning and speeding placed the defendant in jeopardy and therefore precluded a subsequent criminal prosecution for aggravated assault and criminal damage arising out of the same conduct. This court determined that "[t]he sanctions that flow from violating the speeding and unsafe turning laws are clearly intended to deter the offender and other drivers from committing such infractions and to promote retribution." 166 Ariz. at 363, 802 P.2d at 1062. We added that when a driver accumulates a certain number of such violations, suspension or revocation of the driver's license may result. This consequence, we said, could "hardly be characterized as remedial." *Id.* This language was obiter dictum, which we now disavow. We ac-

knowledge that suspending or revoking the license of one who repeatedly violates civil traffic laws, like the automatic suspension of the license of one who is determined to be presumptively intoxicated, may be punitive from the viewpoint of the license holder, but is primarily remedial; its purpose is to remove from our highway drivers who are a danger to the public.

We conclude that Layne's double jeopardy rights are not violated by prosecuting him for driving while under the influence of alcohol under A.R.S. § 28–692 after his license has been suspended for 90 days under § 28–694. The superior court's reversal of the city court's denial of Layne's motion to dismiss the DUI prosecution is, therefore, reversed and this matter is remanded for further proceedings.

FERNANDEZ, C.J., and HOWARD, J., concur.