912 P.2d 1373

**Michael Joseph MARZOLF, Petitioner,**

**v.**

**SUPERIOR COURT OF the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Bernard J. Dougherty, a judge thereof, Respondent Judge,**

**Kerry G. WANGBERG, Phoenix City Prosecutor, Real Party in Interest.**

No. 1 CA–SA 95–0245.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 21, 1995.

Reconsideration Denied Dec. 19, 1995.

Review and Cross–Petition for Review Denied March 19, 1996.

**146**

Martin G. McAuliffe, Tempe, for Petitioner.

Roderick G. McDougall, Phoenix City Attorney, by Samuel K. Lesley, Assistant City Prosecutor, Phoenix, for Respondent.

**OPINION**

KLEINSCHMIDT, Judge.

This special action presents the question whether the suspension of a driver's license because a driver fails a breath test precludes, on Double Jeopardy grounds, a later punishment for driving under the influence ("DUI"). We are aware that Division Two of this Court has already addressed this question in *State v. Nichols,* 169 Ariz. 409, 819 P.2d 995 (App.1991). We take up the issue

again because *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which was decided after *Nichols,* requires further consideration of the question.

In June of 1994, Michael Marzolf was arrested and charged with driving under the influence of alcohol. He took the breath tests provided for by Ariz.Rev.Stat. ("A.R.S.") section 28–691, and these resulted in blood alcohol content readings of more than .25 which is well above the legal limit. He was charged with driving under the influence and driving with a blood alcohol content in excess of .10 in violation of A.R.S. section 28–692(A)(1) and (2).

Before the criminal prosecution went to trial, an administrative hearing was held and Marzolf's driver's license was suspended for ninety days pursuant to A.R.S. section 28–694. Marzolf then moved to dismiss the criminal charges, claiming that he had already been punished administratively and that further punishment would violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. The motion was denied and Marzolf was convicted of DUI. His sentence was suspended pending the outcome of this special action.

■ We accept jurisdiction because a petition for special action is the appropriate method for reviewing an interlocutory Double Jeopardy claim. *Nalbandian v. Superior Court,* 163 Ariz. 126, 127–28, 786 P.2d 977, 978–79 (App.1989). We conclude that the Double Jeopardy Clause does not bar prosecution, and we deny relief.

***THE ADMINISTRATIVE HEARING AND THE CRIMINAL PROSECUTION WERE NOT WITHIN THE "SAME PROCEEDING" EXCEPTION TO DOUBLE JEOPARDY PROTECTIONS***

■ The Fifth Amendment prohibition against Double Jeopardy protects against "a second prosecution for the same offense after

acquittal ... against a second prosecution for the same offense after conviction ... [and] against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). However, there is no bar to multiple prosecutions or punishments imposed in the "same proceeding." *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

■ Marzolf asserts that the DUI prosecution and the administrative hearing are not the same proceeding. We agree. Two actions involving the same conduct are not part of the "same proceeding" when they are instituted at different times, tried before different fact finders, presided over by different judges, and resolved by separate judgments. *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994). In this case, the criminal DUI proceeding was initiated in the municipal court, contrasted to the administrative license suspension which took place before the Department of Motor Vehicles. The administrative suspension was resolved by the Department of Motor Vehicles, while the DUI prosecution was resolved by separate judgment of the municipal court. Therefore, the administrative suspension and DUI prosecution are not part of the "same proceeding" under *Hunter* and Double Jeopardy protections may apply in this case.

## AN ADMINISTRATIVE LICENSE SUSPENSION UNDER § 28–694 AND A DUI CONVICTION UNDER § 28–692(A)(1) ARE NOT BASED ON THE "SAME OFFENSE" SO THAT DOUBLE JEOPARDY DOES NOT BAR A SECOND PUNISHMENT OR PROSECUTION

■ The next question is whether the second proceeding is based on the "same offense" as the first proceeding. If the proceedings are based on the "same offense," then the Double Jeopardy Clause bars a second prosecution or punishment. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (*overruled on*

*other grounds by Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)); *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *State v. Cook*, 196 Ariz.Adv.Rep. 17, 185 Ariz. 358, 916 P.2d 1074 (App. August 3, 1995). Under *Blockburger*, the proceedings are not based on the "same offense" if each proceeding requires proof of a fact which the other proceeding does not. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

Driving under the influence as defined in A.R.S. section 28–692(A)(1) requires the occurrence of the following: (i) the defendant was driving or in actual physical control of a car; and (ii) the defendant was under the influence of alcohol and was impaired to the slightest degree. Administrative license suspension is authorized under A.R.S. section 28–694 when: (i) a person arrested for DUI under section 28–692 submits to a blood or breath test resulting in a blood alcohol content of 0.10 or more; and (ii) the arresting officer forwards this information to the Department of Motor Vehicles with his statement of grounds for believing that the person violated A.R.S. section 28–692.

■ A conviction for DUI under section 28–692(A)(1) and an administrative license suspension under section 28–694 each require proof of an element not required by the other. A DUI conviction under section 28–692(A)(1) requires proof that the driver was under the influence of alcohol and impaired, compared to an administrative license suspension which requires proof of a blood alcohol content of 0.10 or more. In *Anderjeski v. City Court of City of Mesa*, 135 Ariz. 549, 550–51, 663 P.2d 233, 234–35 (1983), the Arizona Supreme Court noted that:

> [i]t is possible to have less than 0.10 blood alcohol content and still be under the influence of intoxicating liquor.... On the other hand, a person may have over 0.10 per cent blood alcohol content and still not [be] impaired [or under] the influence of intoxicating liquor.

This is consistent with the fact that while section 28–692(E) presumes that a defendant

was not under the influence if his blood alcohol content was less than .05, and further presumes that the defendant was under the influence if his blood alcohol level was more than 0.10, these presumptions are *rebuttable.* Thus, the statute recognizes that a person may be impaired without having a 0.10, or that one may have a 0.10 without being impaired. A.R.S. § 28–692(E).

■ The DUI statute and the license suspension statute are not based upon the "same offense" as that term is used in *Blockburger.* Therefore the Defendant's administrative license suspension does not bar a subsequent DUI prosecution under section 28–692(A)(1), regardless of whether or not the administrative license suspension is a "punishment" or "prosecution" for Double Jeopardy purposes.

### AN ADMINISTRATIVE LICENSE SUSPENSION UNDER § 28–694 AND A CONVICTION FOR DUI UNDER § 28–692(A)(2) ARE BASED UPON THE "SAME OFFENSE" SO THAT IF THE ADMINISTRATIVE PROCEEDING OR SANCTION CONSTITUTES A PROSECUTION OR PUNISHMENT, DOUBLE JEOPARDY WOULD BAR IT

Proof of driving under the influence as defined in A.R.S. section 28–692(A)(2) requires a showing that: (i) the defendant was driving or in actual physical control of a car; and (ii) the defendant had a blood alcohol content of 0.10 or more within two hours of having actual physical control of a car. Thus, both a DUI under section 28–692(A)(2) and a license suspension under section 28–694 clearly require proof that the defendant had a blood alcohol content of 0.10 or more. Moreover, because an administrative suspension requires a report of the officer's grounds for arrest for DUI under section 28–692(A)(2), both statutes require proof that a defendant had a 0.10 within two hours of having physical control of a car.

■ Under the *Blockburger* "same elements" test, an administrative license suspension requires proof of all of the elements of a DUI conviction under section 28–692(A)(2). Because neither statute requires proof of an element which the other does not, an administrative license suspension under section 28–694 and a DUI prosecution under section 28–692(A)(2) are predicated upon the "same offense" and, under *Blockburger,* Double Jeopardy bars a second punishment or prosecution.

Thus, the inquiry becomes whether an administrative license suspension under section 28–694 constitutes a "punishment" or a "prosecution" for Double Jeopardy purposes. We find, for the reasons we discuss in detail below, that the administrative license suspension does not constitute a Double Jeopardy "punishment." We do not address whether the administrative license suspension constitutes a Double Jeopardy "prosecution" because the Defendant did not assert this claim. However, we note that under the line of authority found in *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), it would be difficult for a defendant to prevail upon such an argument.

### THE CHARACTER OF A SANCTION AS DOUBLE JEOPARDY "PUNISHMENT" IS DEFINED BY UNITED STATES V. HALPER AND AUSTIN V. UNITED STATES

■ The next inquiry is whether the administrative license suspension constitutes "punishment" within the meaning of the Double Jeopardy Clause. To resolve this we look to *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). *Halper* involved a challenge to a civil proceeding against a defendant who had already been convicted of criminal charges arising out of his submission of false medicare claims. The false claims amounted to a few hundred dollars, but the civil fines sought would have amounted to $130,000. Since the fines requested seemed grossly disproportionate to the damage caused by the defen-

dant's fraud and the costs of prosecuting him, the *Halper* Court found that the requested civil sanction might constitute a second punishment which was barred by the Double Jeopardy Clause, and the Court remanded so the government could attempt to prove the extent of its actual damages. The Court provided the following framework for determining what constitutes "punishment" for Double Jeopardy purposes:

> [T]he determination of whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment[:] ... retribution and deterrence.... *[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment ....* We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not *fairly* be characterized as remedial, but only as a deterrent or retribution.

*Halper*, 490 U.S. at 448–49, 109 S.Ct. 1892, at 1901–02 (emphasis added). The Court also noted that:

> [t]his is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment.

*Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7.

Varying interpretations of what constitutes "punishment" under *Halper* were clarified in *Austin, supra.* Although *Austin* dealt with an Eighth Amendment claim of excessive fines, the Court made it clear that a sanction is "punishment" if it can be fairly said to serve *any* punitive goal:

Under *Halper*, the question is whether forfeiture serves *in part* to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion.

*Id.* at 618 n. 12, 113 S.Ct. at 2810 n. 12 (emphasis added).

Turning back to *Halper*, we note that the Court went on to find that the civil forfeiture in question was remedial up to the point that it was rationally related to reimbursing the government for its investigation and prosecution expenses, and that anything *beyond* that was punitive:

> It [is] difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but *beyond which* the sanction takes on the quality of punishment.... While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, the defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.... In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole.

*Halper*, 490 U.S. at 449–51, 109 S.Ct. at 1902–03 (emphasis added).

 Distilled to their essence, the holdings in *Halper* and *Austin* are these: A sanction which has a solely remedial purpose is not punishment within the meaning of the Double Jeopardy Clause. A sanction which has *any* deterrent or retributive purpose is not solely remedial and is "punishment" within the meaning of the Double Jeopardy

Clause. The question whether a sanction has any retributive or deterrent purpose is not to be viewed through the defendant's eyes. A sanction has a solely remedial purpose, even if its effect is to deter or even if the defendant feels the "sting of punishment" in the retributive sense, until the sanction goes beyond what is reasonably necessary to achieve its remedial purpose.

### AN ADMINISTRATIVE LICENSE SUSPENSION UNDER § 28–694 DOES NOT CONSTITUTE DOUBLE JEOPARDY "PUNISHMENT"

 In *State v. Nichols*, which we alluded to at the beginning of this opinion, Division Two of this Court held that the Double Jeopardy Clause does not bar a prosecution for DUI after a driver's license has been suspended in an administrative proceeding. *Id.* at 409, 819 P.2d at 995. A license suspension for driving with excessive blood alcohol content is meant to protect the public by removing drunken drivers from the road. *Id.* at 413, 819 P.2d at 999; *State v. Zerkel*, 900 P.2d 744, 752 (Alaska App.1995). A driver's license suspension is rationally related to this remedial goal of increasing safety. *See, e.g., Butler v. Department of Public Safety and Corrections*, 609 So.2d 790, 797 (La.1992) ("[a driver's] license suspension, in contrast to Halper's fine, bears a rational relationship to the legitimate governmental purpose of promoting public safety on Louisiana highways").

The Defendant argues that *Nichols* cannot survive the Supreme Court's holdings in *Halper* and *Austin* to the effect that a sanction which serves *in part* to punish brings the Double Jeopardy Clause into play. In *Nichols*, Division Two did state that one of the goals of a license suspension was to *deter* drunk driving. The Defendant argues that since deterrence is a goal of the suspension process, the suspension was "punishment" and further punishment is barred.

Given what the Supreme Court has said in *Halper* and *Austin*, we believe that the deterrence which Division Two referred to in

*Nichols* is properly characterized as an effect, rather than a goal, of a license suspension proceeding under section 28–694. It is almost impossible to think of any remedial regulation that does not have a collateral deterrent effect. But, because an administrative license suspension under section 28–694 does not go beyond what is reasonably necessary to remove drunk drivers from the road, it is fair to classify its purpose as remedial *in toto*. Therefore, the suspension of the Defendant's license was not "punishment" for Double Jeopardy purposes. A number of courts around the country, based on various rationales, have reached the same conclusion we do. *See, e.g., State v. Jones*, 340 Md. 235, 666 A.2d 128 (1995); *State v. Higa*, 79 Hawai'i 1, 897 P.2d 928 (1995), and cases cited therein; *State v. Hanson*, 532 N.W.2d 598 (Minn.App.1995); *State v. Zerkel, supra.*

 We have not lost sight of the fact that in *Sherrill v. Department of Transp.*, 165 Ariz. 495, 799 P.2d 836 (1990), the Arizona Supreme Court, in referring to the legislative history of a license suspension under A.R.S. section 28–691, said that its purpose was to "assure that licenses of dangerous drivers are revoked quickly, *and to increase the certainty that a drunk driver receives a penalty even if that driver provided no evidence of intoxication.*" *Id.* at 498, 799 P.2d at 839 (emphasis added). This language ascribing a punitive purpose to the statute did not, however, come from the legislature, but rather originated with representatives of both the Phoenix Prosecutor's Office and the National Transportation Safety Board. *DUI License Suspension: Hearings on H.B. 2273 Before the Committee on Judiciary*, 38th Legis., 1st Sess. 14 (1987) (statement of Steve Blackistone, State and Local Liaison, NTSB). Consequently, the statement does not necessarily describe the purpose the legislature had in mind in passing the statute. Furthermore, *Sherrill* was discussing section 28–691 which authorizes an administrative license suspension when a driver arrested for DUI refuses to give blood or breath tests. This suspension is imposed whether or not

the driver was actually intoxicated or impaired. In such a case, it might be argued that a license suspension does penalize the driver for failure to cooperate with the implied consent statute. However, section 28–694—the statute at issue in this case—authorizes suspension only when a driver has an excessive blood alcohol content. That punishment is arguably the goal behind a license suspension under section 28–691 [1] does not mean that punishment is a goal behind a license suspension under section 28–694.

Jurisdiction is accepted and relief is denied.

THOMPSON, P.J., EHRLICH, J., concur.

---

1. We note, however, that while an administrative license suspension under section 28–691 may be punitive, Double Jeopardy would not ban a subsequent DUI prosecution under section 28–692 because the two proceedings would not be based upon the "same offense." *See Blockburger, supra.*